# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| JOSHUA L. HOLLADAY, *et al.*, |
| *Plaintiffs*, |
| v. |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, |
| *Defendants*. |

Civil Action No. 17-915 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiffs—over fifty individuals, including American soldiers, who were injured or killed in forty-three separate terrorist attacks that took place in Iraq between December 17, 2003 and November 20, 2009, and over seventy of their family members—bring this civil action pursuant to the Foreign Sovereign Immunities Act, §§ 1602–1611 ("FSIA"), against six defendants: the Islamic Republic of Iran ("Iran"), its Islamic Revolutionary Guard Corps ("IRGC"), the Iranian Ministry of Intelligence and Security ("MOIS"), Bank Markazi Jomhouri Islami Iran ("Bank Markazi"), Bank Melli Iran ("Bank Melli"), and the National Iranian Oil Company ("NIOC").[1] *See* Dkt. 16 at 1–3, 20–38, 116–99 (Am. Compl.). Although the allegations contained in the two-hundred-page complaint are sweeping, the motion currently before the Court poses a narrow question: Have Plaintiffs satisfied the FSIA's service-of-process requirements? *See* Dkt. 68 at 3. For reasons explained below, the Court concludes that Plaintiffs have done so as to some but not all defendants.

---

[1] Plaintiffs also brought suit against a seventh Defendant, Melli Bank PLC, but later voluntarily dismissed their claims against that defendant pursuant to Federal Rule of Civil Procedure 41(a). *See* Dkt. 70; Minute Order (Oct. 9, 2019).

# I. LEGAL STANDARD

As explained in more detail below, the key question at issue here—whether Plaintiffs have properly served each defendant—turns on two inquiries. First, the Court must categorize each defendant to determine whether it must be served under § 1608(a) or § 1608(b). Although these provisions are similar in many ways, they also differ in important respects, with each imposing unique demands. Second, after deciding which provision governs as to each defendant, the Court must determine whether Plaintiffs' attempts to effectuate service satisfied the applicable requirements. Determining the answers to both questions requires the Court to weigh the evidence Plaintiffs have produced in support of their motion. Doing so raises the question as to the proper burden of proof Plaintiffs must satisfy. The D.C. Circuit has opined that a court adjudicating an FSIA case against an absent defendant must "satisfy itself that it has personal jurisdiction." *Mwani v. Osama Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Under the FSIA, moreover, service of process is a key component of personal jurisdiction. *See Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990) (citing 28 U.S.C. § 1330(b)). "In the absence of an evidentiary hearing," plaintiffs may satisfy their burden of satisfying personal jurisdiction by making a "prima facie showing" based on "their pleadings" and "bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 7 (internal citation and quotation omitted). "The Court must, therefore, satisfy itself Plaintiffs have made a "prima facie showing" that they properly effected service with respect to each defendant.

# II. ANALYSIS

Section 1608 governs service of process under the FSIA and provides separate paths that plaintiffs must follow depending on the nature of the entity being served. *See* 28 U.S.C. § 1608.

If plaintiffs seek to serve a "foreign state," they must comply with the requirement set out in § 1608(a), and, if they seek to serve an "agency or instrumentality of a foreign state," they must comply with the requirements of § 1608(b). *See Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 31 (D.D.C. 2014). The D.C. Circuit has offered the following guidance for determining which path applies: "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003); *see also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 149–50 (D.C. Cir. 1994) (same). "A nation's armed forces" or its "Ministry of Foreign Affairs," for example, "are clearly . . . governmental," *id.*, while a state-owned commercial airline is clearly commercial, *see, e.g.*, *Seramur v. Saudi Arabian Airlines*, 934 F. Supp. 48, 51 (S.D.N.Y. 1996). Applying this approach here, the Court finds that three of the defendants—Iran, IRGC and MOIS—are "the foreign state itself" and that one of the defendants—Bank Melli—is an "agency or instrumentality" of Iran. With respect to the two remaining defendants—Bank Markazi and NIOC—the Court needs additional information to render a decision.

Starting with Iran, IRGC, and MOIS, the Court finds that all three are subject to service under § 1608(a) as "the foreign state or [a] political subdivision" thereof. 28 U.S.C. § 1608(a). Iran is, of course, the foreign state itself, and the "core functions" of IRGC and MOIS are inherently governmental. *See Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 59 (D.D.C. 2007) ("[B]oth MOIS and [IRGC]" must be treated as the foreign state for purposes of § 1608(a)); *Azadeh v. Gov't of the Islamic Republic of Iran*, No. 16-1467, 2018 WL 4232913, at *39 n.6 (D.D.C. Sept. 5, 2018) (IRGC must be treated as the foreign state itself for purposes of § 1608). IRGC, as a branch of the Iranian Armed Forces, performs a military function, and

MOIS serves as Iran's primary intelligence agency. *See* Dkt. 16 at 24–30 (Am. Compl. ¶¶ 58–88). As a result, they are both "so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state." *Transaero, Inc.*, 30 F.3d at 153.

In contrast, the core function of the Bank Melli is commercial, and it is therefore subject to service as "an agency or instrumentality of a foreign state" under § 1608(b). As described in the declaration of Gary Kleiman, a consultant who specializes in "global emerging economy and financial market analysis," and who professes familiarity with "the operations of Bank Markazi, Bank Melli . . . , and NIOC," Dkt. 68-19 at 1–2 (Kleiman Decl. ¶ 4), Bank Melli "engages in wide ranging retail and wholesale activities through its domestic network of over 3000 branches and 15 overseas branches and subsidiaries," *id*. at 5 (Kleiman Decl. ¶ 13). "[T]ogether with its subsidiaries," Bank Melli "provides commercial banking services in Iran and internationally," and "its banking products and services include foreign exchange transactions; foreign currency accounts, long-term and short-term foreign currency investment deposits . . . ; money transfer and remittances; plastic card services; imports and exports services; foreign exchange facilities; and imports services in industrial and commercial economic zones." *Id.* at 5 (Kleiman Decl. ¶ 14). "As a result of Bank Melli['s] significant commercial activities," Kleiman attests that "it is considered in the banking industry as primarily having a commercial purpose and [as] a competitor to other large regional banks." *Id.* In short, Bank Melli functions much like a large, privately-held bank. *See Shoham v. Islamic Republic of Iran*, No. 12-508, 2017 WL 2399454, *28–29 (D.D.C. 2017) (the business of banking is commercial in nature).

The status of the two remaining defendants—Bank Markazi and NIOC—is less clear and cannot be resolved on the current record. Kleiman attests that Bank Markazi "is the central bank

of Iran" tasked with setting "monetary and credit policies" and "granting loans to state enterprises and agencies." Dkt. 68-19 at 3 (Kleiman Decl. ¶ 8) (citation and quotation omitted). He further attests that the bank "sets and supports sector credit directives where agriculture, manufacturing and mining, and construction and housing accounted for over half the total in recent years," *id.*, and that, in 1960, Bank Markazi assumed certain responsibilities ("note issue, supervisory and government account operation") "previously conducted by Bank Melli," *id.* at 4 (Kleiman Decl. ¶ 11). Based on the Kleiman declaration, some—and perhaps much—of what Bank Markazi does is plainly governmental in nature. Monetary policy, for example, is one of the key tools that governments use to influence their nation's economy. Nor can the Court conclude, on the existing record, that Bank Markazi acts in a commercial manner when it "loans" funds to "state enterprises and agencies." Moreover, even if some of the functions that Bank Markazi performs are commercial in nature, the current record does not provide a basis for the Court to decide whether the bank's governmental or commercial activities predominate.

Although it appears more likely that NIOC's core functions are commercial—as opposed to governmental—the record is, again, incomplete. The Kleiman declaration acknowledges that NIOC performs "dual" functions, some governmental and others commercial. *Id.* at 6 (Kleiman Decl. ¶ 17). The declaration provides some information regarding NIOC's commercial activity, including, most notably, that NIOC "engages in the exploration and production of oil and natural gas resources." *Id*. at 7 (Kleiman Decl. ¶ 22). It provides very little information, however, about the extent of NIOC's governmental activity beyond the conclusory assertion that it "has been an instrument of government" and that "NIOC's Board Chair" also serves as the Minister of Petroleum and, in that role, performs "public administration responsibility[ies.]" *Id.* (Kleiman Decl. ¶¶ 17–18). Without a better understanding of NIOC's governmental responsibilities, and

5

an understanding of how those responsibilities compare to the company's commercial activities, the Court cannot determine whether NIOC is subject to service under § 1608(a) (as a foreign state or political subdivision) or under § 1608(b) (as an agency or instrumentality of a foreign state).

In light of the above, the Court will (1) determine whether Iran, IRGC, and MOIS have been properly served under § 1608(a); (2) determine whether Bank Melli has been properly served under § 1608(b); and (3) deny Plaintiffs' motion for a determination that they have effectively served Bank Markazi and NIOC as premature, pending the Court's receipt of additional information regarding the status of Bank Markazi and NIOC. The Court further notes that to the extent either of those entities should be treated as a foreign state or political subdivision of a foreign state, Plaintiffs will need to do more to effect service and that, to the extent they are treated as agency or instrumentality of a foreign state, the Court may require additional information about the delivery and return of the documents served pursuant to § 1608(B)(3)(B).

**A.    Service on Iran, MOIS, and IRGC pursuant to § 1608(a)**

As explained above, service on a foreign state or political subdivision is governed by § 1608(a), which "prescribes four methods of service, in descending order of preference. *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008). Plaintiffs must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Id.* Specifically, a party may serve a foreign state:

> (1)    by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

The first two mechanisms for effecting service are not available to Plaintiffs in this case because there is neither a "special arrangement" that governs service between Plaintiffs and Iran nor is Iran a "party to an 'international convention on service of judicial documents.'" *Hamen v. Islamic Republic of Iran*, No. 16-1394, 2019 WL 3753800, at *16 (D.D.C. 2019) (quoting *Ben-Rafael*, 540 F. Supp. 2d at 52)). As a result, Plaintiffs correctly attempted service under § 1608(a)'s third paragraph. Dkt. 23. As contemplated by that paragraph, the Clerk of Court mailed the relevant documents to Iran on November 13, 2017. Dkt. 25. On December 14, 2017, Plaintiffs notified the Court that the mailing was returned as undeliverable. *See* Dkt. 29.

Given that service could not be effected under the third paragraph, Plaintiffs proceeded to serve Iran, IRGC, and MOIS pursuant to § 1608(a)(4). That paragraph requires a plaintiff to send two copies of the summons, complaint, and notice of suit—along with a translation of each

7

document—to the Clerk of Court, who must then provide those materials to to the Secretary of State (attn: Director of Special Consular Services), and the Secretary must then transmit one copy of the required materials through diplomatic channels to the foreign state. 28 U.S.C. § 1608(a)(4). The Department of State must then send "the Clerk of the Court a certified copy of the diplomatic note indicating when the papers were transmitted." *Id.*

On December 14, 2017, Plaintiffs provided the Clerk with the required materials and requested service pursuant to § 1608(a)(4). *See* Dkt. 30. On December 19, 2017, the Clerk mailed these materials to the State Department, Dkt. 32, and, on April 30, 2018, the State Department sent the Clerk a certified copy of a diplomatic note from Foreign Interests Section of the Embassy of Switzerland in Tehran, showing that the required materials commencing suit against Iran, IRGC, and MOIS were delivered to the Iranian Ministry of Foreign Affairs. Dkt. 50. The materials were delivered with the assistance of the Swiss government because the United States does not maintain diplomatic relations with Iran. *Id.*

Accordingly, the Court finds that Plaintiffs efforts to serve Iran, MOIS, and IRGC satisfied the requirements of § 1608(a)(4).

**B.     Service on Bank Melli pursuant to § 1608(b)**

The rules for serving an agency or instrumentality of a foreign state under § 1608(b) are similar, but not identical, to the rules applicable to service of a foreign state or political subdivision. Under § 1608(b), an agency or instrumentality may be served:

(1)     by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2)     if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of

8

>     process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
>   (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>
>   (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
>   (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b).

As with § 1608(a), neither of the first two methods—the "special arrangement" and "applicable international convention" mechanisms—are available in this case. This, then, leaves the third paragraph, which provides three alternatives. Unlike the other provisions of § 1608(a) and § 1608(b), this portion of the statute does not require the plaintiff to attempt and fail at service under subparagraph (3)(A) before proceeding to subparagraph (3)(B). The method employed, however, must be "reasonably calculated to give actual notice." 28 U.S.C. § 1608(b)(3). Here, Plaintiffs endeavored to effect service pursuant to § 1608(b)(3)(B), which requires a plaintiff to deliver a summons and a copy of the complaint, together with a translation of each, to the Clerk of the Court, who must then mail the required materials to the defendant in a "form . . . requiring a signed receipt." *Id.*

On October 31, 2017, Plaintiffs delivered to the Clerk of the Court the required materials, including copies translated to Farsi, and requested that the Clerk mail the documents to Bank Melli (as well as Bank Markazi and NIOC). *See* Dkt. 23. On November 13, 2017, the Clerk filed a Certificate of Mailing, along with a copy of the DHL mailing receipt. *See* Dkt. 25.

9

In December 2017, Plaintiffs received notice that the package was successfully delivered to and signed for by an agent of Bank Melli. *See* Dkt. 28-1. Service as to Bank Melli, therefore, is satisfied pursuant to 28 U.S.C. § 1608(b)(3)(B).

**C.     Bank Markazi and NIOC**

For the reasons discussed above, the Court will not decide, on the present record, whether Plaintiffs have effected service on Bank Markazi and NIOC. In addition to the questions raised above, however, one additional concern warrants mention and, as the Court explained to counsel at a recent telephonic status conference, *see* Minute Entry for Telephone Conference (Sept. 19, 2019), may require a further evidentiary showing from Plaintiffs. In particular, unlike the materials serviced on Bank Melli, the materials served on Bank Markazi and NIOC were mailed back to the clerk's office. *See* Dkt. 40, 42. To be sure, the record indicates that DHL "delivered" the mailings to Bank Markazi and NIOC and that someone at each of those entities signed for the delivery. *See* Dkt. 27-1 at 3 (letter from DHL indicating that the service package was delivered to Bank Markazi and signed for by "D.S."); Dkt. 28-1 at 3 (DHL letter indicating that the service package was delivered to NIOC and signed for by "Norafkan").

What is unclear from the existing record, however, is who mailed the materials back to the Clerk's office, whether the materials were immediately returned or (as some evidence suggests) the materials were not returned until days after they were received, and whether—in light of all the circumstances—service was "reasonably calculated to give actual notice" to the defendants. 28 U.S.C. § 1608(b)(3).[2] In light of the uncertainty whether Bank Markazi and

---

[2]  The Court further notes that decisions in this circuit have taken different approaches as to the question whether a signature on the receipt, alone, is sufficient to satisfy the requirements of § 1608(a)(3)'s service by "mail requiring a signed receipt" mechanism. *Compare Haim v. Islamic Republic of Iran*, 902 F. Supp. 2d 71, 73 (D.D.C. 2012) (concluding that service was ineffective although "someone apparently signed" for the service package), *with Flatow v.*

10

NIOC are subject to service under § 1608(a) or § 1608(b); uncertainty about the factual circumstances surrounding delivery of the required materials; and uncertainty about whether a signature, alone, is sufficient, the Court will await development of a more complete factual record before deciding whether Plaintiffs have successfully effected service on Bank Markazi and NIOC.

## CONCLUSION

For the reasons explained above, it is hereby **ORDERED** that Plaintiffs' motion for an order finding that service of process has been effected is **GRANTED** in part and **DENIED** in part without prejudice. Plaintiffs' motion is **GRANTED** with respect to defendants Iran, IRGC, MOIS, and Bank Melli. Plaintiffs' motion is **DENIED** without prejudice as to defendants Bank Markazi and NIOC.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 23, 2019

---

*Islamic Republic of Iran*, 999 F. Supp. 1, 6 n. 1 (D.D.C.1998) (holding service was effective even though the defendant returned the service package); *see also* 28 U.S.C. § 1608(c) (providing that service is "deemed to have been made . . . as of the date of receipt indicated in the . . . signed and returned postal receipt . . ."). Because § 1608(a)(3) is similar—though not identical—to § 1608(b)(3)(B), these cases may be relevant in the Court's ultimate decision as to whether service was effective here as to NIOC and Bank Markazi. Given the current factual uncertainty, however, the Court need not address that question of law at this time.